Cardona, EJ.
Appeal from a judgment of the Supreme Court (Spargo, J.), entered June 14, 2002 in Albany County, which, in a proceeding pursuant to CFLR article 78; dismissed the petition for failure to exhaust administrative remedies.
On December 21, 1999, respondent National Finance Corporation (hereinafter NFC), a national mortgage loan processing firm, closed its office in the Town of Clifton Dark, Saratoga County. Thereafter, a number of NFC employees filed claims with the Department of Labor (hereinafter DOL), alleging that NFC failed to pay them a portion of their December 1999 wages and certain wage supplements (see Labor Law § 196-a). In October 2000, petitioner issued two orders to comply based upon a determination by the DOL that NFC failed to pay certain wages and wage supplements to 35 employees. Due to NFC’s failure to provide adequate information about these claims, the amounts in the orders were based almost exclusively on the employees’ sworn claims.
*851 In December 2000, NFC petitioned respondent Industrial Board of Appeals (hereinafter IBA) for review of the “validity or reasonableness” of the two orders as provided in Labor Law § 101 (see 12 NYCRR part 66), which NFC claimed were, inter alia, “overstated” by the DOL. NFC provided additional documentary information as to the claims which was not previously available to the DOL. The DOL reviewed the new information, reduced the original numbers in its orders and gave NFC the revised figures and computation sheets at an IBA prehearing conference in March 2001. The DOL did not issue formal amended compliance orders. In the meantime, while it initially appeared that NFC would participate in the IBA hearing, the record establishes that NFC was placed under the supervision of an interim bankruptcy trustee in April 2001 and a determination was made that NFC would not appear.[1] At the hearing, the sole witnesses were two DOL employees. The IBA issued a decision dated November 28, 2001, which, as requested by the DOL, utilized the revised figures presented by the DOL in March 2001 (as corrected by the DOL at the hearing) instead of the figures contained in the original October 2000 compliance orders. The IBA found that the evidence presented supported the orders under review and the imposition of interest and civil penalties. However, the IBA modified and/or revoked several of the individual amounts due. In January 2002, petitioner commenced this CPLR article 78 proceeding claiming, inter alia, that the IBA’s determination was not supported by substantial evidence. Following joinder of issue, Supreme Court dismissed the petition based upon the IBA’s objection in point of law alleging that petitioner failed to exhaust all administrative remedies prior to the commencement of this proceeding.
Initially, we agree with petitioner’s argument that this proceeding was improperly dismissed on the ground of failure to exhaust administrative remedies. Supreme Court premised its decision upon petitioner’s failure, following issuance of the IBA’s November 2001 decision, to make an optional application for reconsideration pursuant to 12 NYCRR 65.41.[2] However, a decision of the IBA, which must be issued in a timely fashion *852 (see 12 NYCRR 65.39), is “final except that such decision shall be subject to appeal by an aggrieved party in a [CPLR article 78 proceeding], if such proceeding is commenced within sixty days after the decision is issued” (Labor Law § 102 [1] [emphasis added]; see 12 NYCRR 65.40). Notably, “the discretionary power to rehear or reopen matters which exists in nearly all administrative agencies, is not sufficient to render an otherwise final order nonfinal” (Matter of Seidner v Town of Colonie, 79 AD2d 751, 752 [1980], affd 55 NY2d 613 [1981]). Here, inasmuch as 12 NYCRR 65.41 does not provide “an automatic right to review [or] a mandatory right to a rehearing” (Matter of Miller v Ambach, 124 AD2d 882, 883 [1986]; see e.g. Matter of Hicks v Fogg, 79 AD2d 258 [1981]), we cannot agree that petitioner’s failure to request discretionary reconsideration precluded her from commencing this proceeding.
Even though we have determined that this proceeding is not barred for failure to exhaust all administrative remedies, it is unnecessary to remit the matter to Supreme Court since, given the presence of a substantial evidence question and the absence of a dispositive objection in point of law, the proper procedure would be transfer to this Court in any event (see CPLR 7804 [g]). Therefore, turning to the merits, we note at the outset that “[i]t is within the IBA’s authority to revoke orders of compliance and civil penalties issued by petitioner” (Matter of Hudacs v Village of Watkins Glen, 208 AD2d 181, 183 [1995]; see Matter of Roberts v Industrial Bd. of Appeals, 106 AD2d 777, 778 [1984]). Additionally, “[i]f the [IBA] finds that the . . . order, or any part thereof, is invalid or unreasonable it shall revoke, amend or modify the same” (Labor Law § 101 [3]). Judicial review of the IBA’s determination “is limited to determining whether the record contains substantial evidence to support the IBA’s decision” (Matter of Hudacs v Village of Watkins Glen, supra at 183).
Here, petitioner’s initial contention that the IBA improperly considered issues outside the scope of NFC’s petition lacks merit. Given the unusual circumstances herein, including the facts surrounding NFC’s nonparticipation in the proceedings, it *853 is not surprising that the December 2000 petition challenging the October 2000 compliance orders does not specifically reference every aspect of the matters addressed in petitioner’s March 2001 revisions. Notably, while the DOL’s counsel specifically requested that the list of modified figures be considered revisions to the original orders when they were introduced into evidence at the hearing, it appears that no formal request of that nature was done earlier. Under the circumstances, we find that NFC’s petition alleging that petitioner “grossly overstated the amount due and owing to the stated employees” adequately establishes that it was objecting to petitioner’s calculations, including the imposition of penalties and interest, as invalid and unreasonable.
Turning to petitioner’s challenge to the IBA’s determination of the individual amounts due the employees, we note that the DOL conceded at the commencement of the hearing that the amounts listed in the original October 2000 compliance orders were incorrect and would require modification. In its decision, the IBA specifically utilized the DOL’s revised March 2001 figures as a starting point in each case. With respect to 14 of the 35 employees, the IBA agreed with the DOL’s revised figures and petitioner does not challenge the order as to these findings. Additionally, petitioner does not dispute the IBA’s resolution of another five employee claims where the DOL did not dispute the IBA’s reasoning in modifying or revoking the disputed orders. As to the remaining claims, while the IBA possessed the authority to modify petitioner’s compliance orders (see generally Matter of McGowan v Guy, 304 AD2d 666 [2003]),[3] we agree with petitioner that certain determinations as to the individual amounts due some of the employees lack sufficient support in the record.
Specifically, with respect to nine of the employees, the IBA reduced their wage or wage supplement claims in situations where NFC did not submit proof contradicting the claims made by its employees.[4] While the IBA justified these conclusions by noting that they were not supported by “credible proof,” it can *854 not be forgotten that Labor Law § 196-a provides that an employer with inadequate records “shall bear the burden of proving that the complaining employee was paid.” Similarly, 12 NYCRR 65.30 states that “[t]he burden of proof of every allegation . . . shall be upon the person asserting it.” Thus, the burden of disproving the amounts sought in the employee claims fell to NFC, not the employees, and its failure in providing that information, regardless of the reason therefor, should not shift the burden to the employees. Accordingly, we conclude that the IBA’s determination should be modified as described herein.
The remaining issues raised by the parties and not specifically addressed herein have been examined and found to be unpersuasive.
Crew III, Peters, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing Supreme Court’s dismissal of the petition on the ground of failure to exhaust administrative remedies and petition treated as one transferred to this Court for de novo review. Adjudged that the determination is modified, without costs, by annulling so much thereof as modified and/or revoked the wage or supplemental wage orders detailed in this decision; matter remitted to respondent Industrial Board of Appeals for further proceedings not inconsistent with this Court’s decision; and, as so modified, confirmed.

. NFC declined to further participate in any of the proceedings, including this appeal.

. As relevant, the regulation states:
“(a) Application for reconsideration after a determination made by the [IBA] shall be in writing, and shall state specifically the grounds upon which the application is based. When any determination, resolution, requirement or order of the [IBA] is sought to be reversed, modified, changed, rescinded or terminated on account of facts or circumstances arising subsequent to a hearing or on account of consequences resulting from compliance with such deter
*852 mination, resolution, requirement or order, which are claimed to justify a reconsideration of the proceeding, the matters relied upon by the applicant shall be set forth fully.
“(b) . . .If any party to the proceeding wishes to oppose the granting of a request for reconsideration, such party must file, within 10 days from the receipt of a copy of the application, a statement setting forth the reasons why it is believed such a request should not be granted.
“(c) The [IBA], at any time, may reopen a proceeding or require a rehearing” (12 NYCRR 65.41 [a]-[c]).

. For example, we cannot say that substantial evidence does not support the IBA’s determination with respect to the claims of employees Ann Naylor and Casey Peregrim.

. Specifically, Thomas Answorth was denied a claim for vacation pay in the amount of $576.92 despite the lack of contradictory proof from NFC. No proof was submitted supporting a denial of payment to Layi Dandles for one personal day. Aice Anderson claimed that she was not paid for 10 commissions of $550 each. While NFC proof disputes the tenth claim, the first nine are basically unopposed, amounting to $4,950 due. Daniel Forgett claimed $400 in bonus payments which is reflected on a time sheet signed by his *854 manager; no substantive proof was submitted supporting denial. The IBA improperly reduced Ann Luse’s wage order by $74.18 despite uncontradicted hearing testimony that this amount was compensation for work performed in an unrelated pay period. John Nazarian’s claims for $116 in bonus payments and $47 for an unpaid medical bill were denied despite lack of proof from NFC to dispute them. Michael Pallozzi’s claim for $62 in bonus payments was uncontradicted by NFC’s proof and, therefore, the denial was unsupported. Melissa Schulz’s wage order was reduced by $135.38 so as to deny her claim for “comp” time despite absence of proof from NFC disputing the claim. Finally, although the IBA denied Christopher Welfley’s claim for $1,000 in commissions, NFC did not submit any proof that could be construed as disputing the claim. As for Wellfley’s claim for $200 in “blue dot” bonuses earned within the period of “1/1/99—12/31/99,” we note that although NFC’s proof indicates that they were not earned between December 5, 1999 to December 18, 1999, there is nothing that disputes the remaining time period alleged by the employee.